**Dale HIGHTOWER, Jr.,
et al., Appellants**

v.

**BAYLOR UNIVERSITY MEDICAL CENTER, Dr. Bernard Fischbach, Dallas Nephrology Associates, Dr. William Sutker, and North Texas Infectious Disease Consultants, Appellees.**

No. 05–07–00389–CV.

Court of Appeals of Texas, Dallas.

April 22, 2008.

Robert D. Bennett, Robert D. Bennett & Associates, P.C., Gilmer, for Appellant.

Michelle E. Robberson, Derek S. Davis, Cooper & Scully, David M. Walsh, IV, Peter H. Anderson, Shakina Rasheed, Chamblee & Ryan, P.C., Dallas, for Appellee.

Before Justices O'NEILL, RICHTER, and LANG.

## OPINION

Opinion by Justice LANG.

Family members and friends who visited a hospital patient infected with rabies sued Baylor University Medical Center, the patient's treating physicians, and the physicians' professional corporations, claiming that during the time the patient was hospitalized, "little or no precautions were set into place" by appellees to prevent visitors of the patient from contracting the patient's "unknown communicable disease." The trial court granted appellees' motions for summary judgment. Appellants present two issues on appeal. First, appellants contend the trial court erred by granting summary judgment in favor of appellees because "the health care providers had a duty to protect the visitors at their facility from being exposed to a communicable disease." Second, appellants assert the trial court erred by failing to grant their motion for continuance.

We conclude the trial court did not err in granting summary judgment in favor of appellees. Appellants did not establish a legal duty owed to them by appellees. In addition, we conclude appellants' second issue was not preserved for this Court's review. Appellants' two issues are decided against them. The trial court's judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The record shows Joshua Hightower received a kidney transplant at Baylor University Medical Center ("Baylor") and was subsequently discharged to his home. His treating nephrologist was Dr. Bernard Fischbach.

Within a month, Joshua Hightower was readmitted to Baylor with symptoms that included "encephalitis, muscle twitching/jerking, nausea/vomiting, diarrhea, fe-

ver, confusion, agitation, pain, and clonus in his lower extremities." Dr. William Sutker, an infectious disease specialist, ordered tests for numerous infectious diseases and treated Joshua Hightower with antibiotics. However, Joshua Hightower died and the cause of his death was later determined to be a rabies infection contracted from the kidney donor.

Appellants filed this suit, claiming that as a result of their contact with Joshua Hightower, they "had to undergo treatments and incur medical expenses as well as other damages." They allege negligence by Baylor, Dr. Fischbach, Dr. Sutker, and the physicians' professional associations in "failing to recognize and/or inform [appellants] about the highly infectious nature of the disease from which Joshua Hightower was suffering," failing to warn them of the risks of exposure, and failing to use infection control precautions.

Pursuant to rule 166a(c) of the Texas Rules of Civil Procedure, appellees filed separate, similar motions for summary judgment asserting they did not owe any legal duty to appellants.[1] Appellants filed a motion for continuance asserting insufficient time for discovery before the hearing on appellees' motions for summary judgment. Additionally, appellants filed an amended petition in which they added allegations concerning appellees' purported negligence and asserted premises liability claims against appellees. Separate, similar responses were filed by appellants to appellees' motions for summary judgment. In each of those responses, appellants asserted in relevant part:

> [Appellees] had a duty based on their own policies and procedures as well as [Centers for Disease Control and Prevention] guidelines to initiate and enforce the use of universal and/or contact precautions, and/or other appropriate precautions in their patient's hospital room, and to also warn or inform their patient's visitors of the potential risk of exposure to some form of infectious disease and the precautions to take to avoid exposure.

The trial court denied appellants' motion for continuance and granted appellees' motions for summary judgment, rendering a take-nothing judgment against appellants.[2] This appeal timely followed.

## II. SUMMARY JUDGMENT

In their first issue, appellants contend the trial court erred in granting appellees' motions for summary judgment because "the health care providers had a duty to protect the visitors at their facility from being exposed to a communicable disease." Appellees assert that because no physician-patient relationship existed between appellants and appellees, appellees owed no duty to appellants. Therefore, appellees argue, the trial court properly granted their summary judgment motions.

### A. Standard of Review

Because summary judgment is a question of law, we review a trial court's summary judgment decision de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003); *Dallas Cent. Appraisal Dist. v. Cunningham*, 161 S.W.3d 293, 295 (Tex.App.-Dallas 2005, no pet.). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must

---

1. In addition, Dr. Fischbach moved for summary judgment on the defense of statute of limitations.

2. The trial court did not specify the grounds upon which summary judgment was granted.

show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. TEX.R. CIV. P. 166a(c); *Pustejovsky v. Rapid–Am. Corp.*, 35 S.W.3d 643, 645–46 (Tex.2000); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant moving for summary judgment must either (1) disprove at least one element of the plaintiff's theory of recovery or (2) plead and conclusively establish each essential element of an affirmative defense. *Biaggi v. Patrizio Rest. Inc.*, 149 S.W.3d 300, 303 (Tex.App.-Dallas 2004, pet. denied). Where, as here, the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review is meritorious. *Provident Life*, 128 S.W.3d at 216; *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989).

### B. Applicable Law

Under the common law, a cause of action for negligence has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Praesel v. Johnson*, 967 S.W.2d 391, 394 (Tex.1998). The existence of a duty is a threshold question of law for the court. *Id.* The nonexistence of a duty ends the inquiry into whether negligence liability may be imposed. *Van Horn v. Chambers*, 970 S.W.2d 542, 544 (Tex.1998).

Medical malpractice differs from ordinary negligence in the circumstances under which a duty arises. *St. John v. Pope*, 901 S.W.2d 420, 423 (Tex. 1995) (on-call physician consulted by emergency room physician by phone did not form physician-patient relationship and therefore owed no duty to patient). Only when a physician-patient relationship exists can there be a breach of duty resulting in medical malpractice. *Id.; Thapar v. Zezulka*, 994 S.W.2d 635, 637–38 (Tex. 1999) (absence of doctor-patient relationship precluded victim's wife from maintaining medical negligence claims against psychiatrist based on treatment and diagnosis of patient who killed victim); *Van Horn*, 970 S.W.2d at 545 (physician owed no duty to hospital employees stemming from medical treatment of patient); *Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 81 (Tex. 1997) (parents could not recover as bystanders in medical malpractice case involving birth of child); *Bird v. W.C.W.*, 868 S.W.2d 767, 770 (Tex.1994) (mental health professional owed no duty to parent not to negligently misdiagnosed condition of child). *But cf. Tex. Home Mgmt., Inc. v. Peavy*, 89 S.W.3d 30, 39 (Tex.2002) (mental health management company, which had right to control patient arising from contract with state and therefore had greater control over patient than ordinarily exercised by physician, did not establish as matter of law that it had no duty to third party to reasonably exercise its right to control patient).

Section 74.001(a)(13) of chapter 74 of the Texas Civil Practice and Remedies Code provides:

"Health care liability claim" means a cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly relat-

ed to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract.

TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(13) (Vernon 2005).

### C. Application of Law to Facts

■ Appellants do not dispute that no physician-patient relationship existed between them and appellees. Rather, appellants argue a physician-patient relationship existed between Joshua Hightower and appellees, and appellants' exposure to an infectious agent was caused by appellees' "breach of the accepted standard of care in caring for Joshua Hightower." Appellants assert chapter 74 of the Texas Civil Practice and Remedies Code supports their claims because it uses the word "claimant" and not "patient" in defining "health care liability claim." Additionally, appellants contend public policy dictates that health care providers "have a duty not to unnecessarily expose their patients' visitors to an infectious disease." Appellants argue, "Universal precautions and contact precautions are in place to protect those who come in contact with the patient; therefore, there is a duty to use these precautions to protect their patient's visitors and prevent the spread of an infectious agent into the community."

■ The Texas Supreme Court has not specifically addressed the necessity of a physician-patient relationship as to medical negligence claims under the current version of chapter 74, which became effective September 1, 2003. See TEX. CIV. PRAC. & REM.CODE ANN. § 74.001 et seq. (Vernon 2005) (eff. Sept. 1, 2003). However, prior to September 1, 2003, the supreme court consistently held that only when a physician-patient relationship exists can there be a breach of duty resulting in medical malpractice. See, e.g., St. John, 901 S.W.2d at 423; Edinburg Hosp., 941 S.W.2d at 81; Bird, 868 S.W.2d at 770. "A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it." Acker v. Tex. Water Comm'n, 790 S.W.2d 299, 301 (Tex.1990). Appellants do not identify any provision of chapter 74, nor do they cite any case law, that indicates a change in the law from that which existed prior to September 1, 2003 as to the proposition that there can be no breach of duty resulting in medical malpractice in the absence of a physician-patient relationship.

According to chapter 74, a "claimant" is "a person, including a decedent's estate, seeking or who has sought recovery of damages in a health care liability claim." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(2). Under section 74.001(a)(13), a "health care liability claim" is a cause of action against a health care provider or physician for "departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant." Id. § 74.001(a)(13). Further, the statute defines "medical care" and "health care" as acts or treatments performed or furnished "for, to, or on behalf of a patient." Id. § 74.001(10), (19). Appellants have not offered us any guidance as to how the statutory reference to "claimants" in chapter 74 alters the established legal precedent requiring a physician-patient relationship to exist before a duty arises with respect to a claim for medical malpractice.

■ Further, appellants cite no authority to support their assertion that "public policy dictates that health care providers have a duty not to unnecessarily expose their patients' visitors to an infectious disease." A state's public policy is

embodied in its constitution, statutes, and the decisions of its courts. *Johnson v. Structured Asset Servs., LLC*, 148 S.W.3d 711, 727 (Tex.App.-Dallas 2004, no pet.) (citing *Tex. Commerce Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 250 (Tex.2003); *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368, 373 (Tex.2001)). As noted above, the Texas Supreme Court has repeatedly held that only when a physician-patient relationship exists can there be a breach of duty resulting in medical malpractice. *See, e.g., St. John*, 901 S.W.2d at 423; *Edinburg Hosp.*, 941 S.W.2d at 81; *Bird*, 868 S.W.2d at 770. The doctrine of stare decisis is applicable to trial and appellate courts, and we must follow the law as previously declared and applied in the courts in this state. *Simmons Airlines v. Lagrotte*, 50 S.W.3d 748, 752 (Tex.App.-Dallas 2001, pet. denied). Public policy concerns are best resolved by the legislature. *See Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544, 553 (Tex.2001); *In re Rodriguez*, 248 S.W.3d 444 at 452–53 (Tex. App.-Dallas 2008, no pet. h.) (orig.proceeding) (policy determination regarding paternity was matter for legislature rather than trial court) (citing *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex.1992) (orig.proceeding) (per curiam)). Accordingly, in the absence of any supporting legislative or judicial authority, we decline to alter existing law to impose the duty asserted by appellants. Appellants' first issue is decided against them.[3]

---

**3.** Dr. Fischbach asserts in his first issue in his brief before this Court that because appellants did not raise an issue on appeal asserting error as to the granting of his motion for summary judgment based on expiration of the statute of limitations, appellants have waived any such error. However, in light of our conclusion that summary judgment was proper on the ground of lack of duty, we need not address the alternative ground of expiration of the statute of limitations asserted by Dr. Fischbach in his motion for summary judg-

## III. MOTION FOR CONTINUANCE

█ In their second issue, appellants contend the trial court erred in failing to grant their motion for continuance which prevented them from conducting proper discovery to prove the guidelines issued by the Centers for Disease Control and Prevention and other evidence to demonstrate appellees had a duty to appellants. Appellees assert, in part, that "[appellants'] complaint about the denial of their Motion for Continuance seeking additional time for discovery is not preserved for review because the record in this appeal contains no written order denying the motion."

As a prerequisite to presenting a complaint for appellate review, the record must show the complaint was made to the trial court by a timely request, objection, or motion, and the trial court (1) ruled on the request, objection, or motion, either expressly or impliedly, or (2) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. TEX.R.APP. P. 33.1(a). Here, although appellants stated in their December 29, 2006 motion for rehearing that the trial court had denied their motion for continuance, the record does not show the trial court ruled on appellants' motion for continuance. Therefore, appellants have failed to preserve error on this issue. *Id.; Mitchell v. Bank of Am.*, 156 S.W.3d 622, 626 (Tex.App.-Dallas, 2004, pet.denied) (party who failed to obtain ruling from

---

ment or the alleged waiver of error with respect to that ground. *See Provident Life*, 128 S.W.3d at 216 (where trial court does not specify grounds for summary judgment, summary judgment must be affirmed if any theory presented to trial court and preserved for appellate review is meritorious); *see also* TEX. R.APP. P. 47.1 (court of appeals must hand down written opinion as brief as practicable but that addresses every issue raised and necessary to final disposition of appeal).

trial court on motion for jury trial continuance failed to preserve error); *Washington v. Tyler Indep. Sch. Dist.*, 932 S.W.2d 686, 690 (Tex.App.-Tyler 1996, no writ) (party's failure to obtain written ruling on motion for continuance of summary judgment hearing waived any error). We decide appellants' second issue against them.

## IV. CONCLUSION

We conclude the trial court did not err in granting summary judgment in favor of appellees on the ground that appellees owed no duty to appellants. In addition, we conclude appellants' complaint as to the denial of their motion for continuance was not preserved for review. Appellants' two issues are decided against them. The trial court's summary judgment is affirmed.