**REVERSE and REMAND; and Opinion Filed August 9, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00814-CV

### VASSAR GROUP, INC., Appellant
### V.
### HEESEON KO, Appellee

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-17-02575

# MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Vassar Group, Inc. d/b/a Dawn Energy Consulting ("DEC") appeals the trial court's order

granting summary judgment in favor of Heeseon Ko ("Ko") on her breach of contract claim in a

dispute over commission payments. DEC urges the trial court erred in granting summary judgment

in favor of Ko, and in impliedly denying its own counter motion for summary judgment, on Ko's

breach of contract claim. More particularly, DEC claims Ko failed to prove her entitlement to

commissions and DEC conclusively established it has no obligation to pay Ko post termination of

her employment. We conclude, as a matter of law, neither party proved its position as it relates to

Ko's breach of contract claim. Thus, the trial court erred in granting summary judgment in favor

of Ko. We reverse the trial court's judgment granting Ko summary judgment on her breach of

contract claim and remand the cause to the trial court for further proceedings consistent with this

opinion. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP.
P. 47.4.

## BACKGROUND

DEC sells long-term energy contracts and subsequently receives monthly recurring revenue from its customers over the life of the contracts. On June 1, 2015, DEC hired Ko as an administrative assistant and she entered into a Confidentiality, Nondisclosure, and Invention Agreement ("NDA") with DEC. In addition to confidentiality and nondisclosure obligations, the NDA addresses compensation. The compensation provision provides Ko, as "Contractor," would be paid a salary and commissions. More particularly, the NDA states:

> Contractor and DEC agree that DEC shall pay Contractor: an annual salary of $50,000.00 payable semi-monthly on the first (lst) day and the fifteenth (15th) day of the month and subject to applicable federal, state, and local withholding. **Upon termination of this Contract, payments under this paragraph shall cease; provided, however, that Contractor shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which Contractor has not yet been paid, and for any commission earned in accordance with DEC's customary procedures, if applicable**. This section of the Contract is included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment. In addition, DEC will make commission payments to Contractor based on the following: 30% of NEW closed deals or 10% of RENEWAL closed deals of DEC by Claele Smith capped at $35,000.00 for the period June 1, 2015 - May 31 , 2016 and capped at $50,000.00 for the period June I, 2016 - May 31, 201 7. 70% of ALL closed deals of Contractor will be paid, which shall be calculated separately from the commission paid on DEC deals and shall not have a yearly cap. This commission will be paid in accordance with the existing payment terms agreed upon by DEC and suppliers. If Contractor dies during the term of this Contract, Contractor's beneficiary shall be entitled to payments and commission payments for the period ending with the date of Contractor's death.

(emphasis added).

In early 2017, Claele Smith ("Smith"), DEC's President, provided Ko with a revised version of the NDA ("Proposed Agreement"). The Proposed Agreement contained terms Ko was not willing to agree to, including a compensation package that was less favorable than the prior one, and what Ko considered to be onerous termination terms. Ko expressed concerns to DEC

–2–

over the Proposed Agreement. The parties reached an impasse on the form of the new agreement and, on February 15, 2017, Ko emailed Smith stating "[s]ince you've given me no choice but to either sign the new agreement . . . or you would terminate me, I will consider myself to be terminated effective immediately." Ko demanded payment of commissions she claimed were owed.

When it became apparent DEC was not going to make any further payments, Ko sued DEC asserting claims for breach of contract, quantum meruit, and unjust enrichment. DEC responded with a general denial and counterclaimed alleging breach of contract, misappropriation of trade secrets, and unlawful access of DEC's computer network and system under Chapter 33 of the Texas Penal Code and section 143.002 of the Texas Civil Practice & Remedies Code. DEC later nonsuited its counterclaims. DEC filed a motion for traditional summary judgment on Ko's breach of contract, quantum meruit, and unjust enrichment claims. Ko filed her own motion for summary judgment on her breach of contract claim only.

In its motion for summary judgment, DEC argued it was entitled to summary judgment on Ko's breach of contract claim claiming the evidence showed it did not breach the agreement because, under the express language of the NDA and DEC's customary procedures, Ko is not entitled to commissions after termination of her employment. In support of its motion, and response to Ko's motion, DEC attached Ko's original petition; the NDA; Ko and Smith's email correspondence concerning the Proposed Agreement; the transcript of Smith's deposition; the transcript of Smith's then boyfriend, Nick Parker's, deposition; and Smith's affidavit in which she states the basic facts of the case, describing Ko as an entry-level employee who sold only one contract before she resigned in 2017, and for which Ko had already been compensated.

In her motion for summary judgment, and in response to DEC's motion, Ko raised three grounds for summary judgment in her favor and in defense of DEC's motion: (1) the parties never

terminated the NDA, meaning Ko was still entitled to receive the payments specified therein; (2) even if the NDA terminated upon the termination of her employment, the NDA provides that Ko is still entitled to commissions owed for "periods or partial periods that occurred prior to the date of termination and for which Ko has not yet been paid;" and (3) Ko is entitled to commissions under DEC's customary procedure of paying commissions to terminated contractors.[1] In support of her motion, and her response to DEC's motion, Ko attached the NDA; the Proposed Agreement; excerpts from Smith's deposition, in which she acknowledges that DEC was often paid months after a deal closed; excerpts from the deposition of Parker, explaining he, Eduard Cheney, and Sebastian Esquivel ran some deals through DEC; email correspondence between Ko and Smith; and Ko's affidavit in which she gives further background information, specifically stating DEC never notified her the NDA was terminated, indicating that payments from energy providers would not be received for months after DEC performed work for the provider, meaning commissions would be paid many months after work was actually performed, and citing DEC's "unwritten policy" of paying employees (Parker, Cheney, and Esquivel) commissions after termination. Additionally, in support of her claim DEC's customary procedure was to pay commissions post termination, Ko attached NDAs of former DEC contractors, and excerpts from the deposition of Parker.

The trial court granted summary judgment in favor of Ko on the liability portion of her breach of contract claim. The trial court granted summary judgment in favor of DEC on Ko's quantum meruit and unjust enrichment claims. Thereafter, the parties, by Rule 11 agreement, stipulated to the amount of damages. Following a bench trial on attorney's fees, the trial court

---

[1] DEC challenges each of these grounds on appeal.

entered a final judgment awarding Ko actual damages of $12,679.30, trial-court attorney's fees of $74,322.00, and conditional appellate attorney's fees. This appeal followed.

## DISCUSSION

In its first issue, DEC challenges the trial court's grant of summary judgment in favor of Ko and denial of DEC's motion for summary judgment as to Ko's breach of contract claim.

We review the granting of a summary judgment de novo. *Learners Outline, Inc. v. Dallas Indep. Sch. Dist.*, 333 S.W.3d 636, 640 (Tex. App.—Dallas 2009, no pet.). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, we must take as true evidence favorable to the nonmovant; and (3) we must indulge every reasonable inference from the evidence in favor of the non-movant and resolve any doubts in the nonmovant's favor. *Id.*

When, as here, both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law; neither party can prevail because of the other's failure to discharge its burden. *City of Garland v. Dallas Morning News*, 969 S.W.2d 548, 552 (Tex. App.—Dallas 1998) (en banc), *aff'd*, 22 S.W.3d 351 (Tex. 2000). A reviewing court may determine all questions presented; it may affirm the summary judgment entered, reverse and render a judgment for the other party, if appropriate, or reverse and remand if neither party has met its summary judgment burden. *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 50 (Tex. App.—Dallas 2006, pet. denied).

In granting summary judgment in favor of Ko, the trial court did not specify the basis for its ruling. Consequently, DEC, as the challenger of the trial court's order, must show that each of the independent grounds alleged in Ko's motion is insufficient to support the order. *See McMahon*

*Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 468 (Tex. App.—Dallas 2009, pet. denied). In order to obtain reversal of the trial court's denial of its motion for summary judgment, DEC must establish there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *See Ohio Cas. Ins. Co. v. Time Warner Entm't Co.*, 244 S.W.3d 885, 887–88 (Tex. App.—Dallas 2008, pet. denied).

DEC argues the trial court erred in granting Ko's motion for summary judgment and in denying its motion because Ko failed to prove her entitlement to commissions, the NDA mandated that payment of commissions ended at termination except for commissions already earned, which DEC claims it paid, and DEC's customary procedure was not to pay commissions to contractors after termination of their employment. These arguments challenge each of the grounds Ko asserted for summary judgment and touch upon the arguments DEC made in support of its motion for summary judgment on Ko's breach of contract claim.

Ko's breach of contract claim focuses on the NDA and its application to the facts presented in this case. To prove a claim for breach of contract, a party must establish: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *McGraw v. Brown Realty Co.*, 195 S.W.3d 271, 276 (Tex. App.—Dallas 2006, no pet.). A breach of contract occurs when a party fails to perform an act that it has promised to perform. *Hackberry Creek*, 205 S.W.3d at 55.

In construing a written contract, we must ascertain and give effect to the parties' intentions as expressed in the instrument. *Stephens v. Beard*, 485 S.W.3d 914, 916 (Tex. 2016). To do so, we consider the instrument as a whole. *Id*. We presume that the words of a contract reflect the parties' intent, but we must construe words in the context in which they are used. *URI, Inc. v. Kleberg Cty.*, 543 S.W.3d 755, 764 (Tex. 2018).

If, after the pertinent rules of construction are applied, the contract can be given a definite or certain legal meaning, it is unambiguous and courts should construe it as a matter of law. *Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). If a contract is susceptible to more than one reasonable interpretation, it is ambiguous. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered into. *Id.* at 529. A court may conclude a contract is ambiguous even in the absence of such a pleading by either party. *Sage St. Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993). When a contract contains an ambiguity, granting summary judgment based on the contract is improper because the intent of the contracting parties is an issue of fact. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

## I.    Termination of the NDA

DEC maintains the trial court erred in granting Ko summary judgment and in denying its motion for summary judgment on her breach of contract claim because the summary judgment evidence negates the existence of an agreement that could be the subject of a breach of contract claim. More particularly, DEC contends that when Ko's employment was terminated the NDA's compensation provision terminated as well. Thus, asserts DEC, the agreement upon which Ko relies does not exist. Ko responds claiming the NDA was not terminated simply because her employment terminated, so the cessation of payments terms in the compensation provision did not take effect. Ko also contends DEC is estopped from claiming the NDA terminated because it sought to enforce the NDA's nondisclosure provisions after her employment terminated.

We recognize DEC filed a counterclaim seeking to enforce the confidentiality obligations under the NDA. To consider DEC's attempt to enforce the nondisclosure obligations under the NDA to be a judicial admission the agreement remains in full force and effect it must be a clear,

deliberate, and unequivocal statement to that effect. *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). We conclude that by asserting a counterclaim for an alleged violation of the NDA, DEC made no clear and unequivocal assertion that the payment obligations set forth in the NDA continued. *See, e.g.*, *Bliss & Glennon, Inc. v. Ashley*, 420 S.W.3d 379, 393 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("It is the nature of an admission that by intention it be act of waiver, and not merely a statement of assertion or concession, made for some independent purpose"). Consequently, we turn to the NDA to determine whether it establishes, as a matter of law, the agreement either remained in effect or terminated upon the termination of Ko's employment.

The NDA does not contain any provision for how and when any part of the agreement would terminate. The compensation provision states "this section of the Contract is included only for accounting and payroll purposes and should not be construed as establishing a minimum or definite term of employment." Consequently, the NDA itself does not answer the question presented here and would require extrinsic evidence of the parties' intent. In such a case, an ambiguity exists, raising a fact issue for jurors to resolve. *See Fless v. State Farm Lloyds*, 202 S.W.3d 744, 748 (Tex. 2006).

Consequently, there is a genuine issue of material fact as to whether termination of Ko's employment terminated any part of the NDA. Thus, a fact issue remains as to what effect Ko's termination has on her right to receive the compensation specified in the NDA. *See Fulcrum Cent. v. Auto Tester, Inc.*, 102 S.W.3d 274, 278 (Tex. App.—Dallas 2003, no pet.).

## II.    Earned Commissions

DEC further challenges the trial court's grant of summary judgment in favor of Ko, and denial of its motion for summary judgment, on Ko's breach of contract claim based on Ko's

assertion that, even if the NDA terminated upon the termination of her employment, the NDA provided for payment post termination.

As to post termination of the agreement, the NDA provides: "Upon termination of this Contract, payments under this paragraph shall cease; provided, however, that Contractor shall be entitled to payments for periods or partial periods that occurred prior to the date of termination and for which Contractor has not yet been paid, and for any commission "earned" in accordance with DEC's customary procedures, if applicable." The parties have differing theories as to when a commission is "earned" and payable post termination.

DEC's theory is that a commission is earned when DEC receives payment from the client, not when the client enters into an agreement requiring it to make future payments. In support of this theory, DEC relies on portions of Smith's deposition in which she maintains that DEC's independent contractors receive their commissions when DEC receives payments from its customers and that commissions are not earned at the closing of the deals. Thus, DEC urges it only owed Ko commissions from customer payments received before Ko's employment terminated. DEC claims that while DEC may receive payments post termination of Ko's employment from deals Ko worked on, those are not payments that Ko "earned" prior to the termination of her employment.

In contrast, Ko's theory is that a commission is earned once she or Smith closed a deal and that the timing of the payment was just a function of when DEC received payment from the provider. Ko established through her affidavit that DEC would receive recurring payment from a single sale resulting in a revenue stream from which commissions would be paid months after the work was actually contracted for and performed. She further established that DEC was still receiving client payments from deals Ko helped Smith close prior to the termination of her

employment and that she had not been paid her commission on those payments. Ko contends she is entitled to commissions on those payments DEC received after her employment terminated.

The term "earned" is not defined in the NDA and the parties have presented plausible and conflicting evidence on the meaning of the term. Accordingly, the contract is susceptible to at least two reasonable interpretations. Consequently, the contract is ambiguous, creating a fact issue on the parties' intent. *See United Protective Servs. Inc. v. W. Vill. Ltd. P'ship*, 180 S.W.3d 430, 432 (Tex. App.—Dallas 2005, no pet.) (holding that genuine issue of material fact as to parties' intent regarding requirement for notice to terminate contracts precluded entry of summary judgment); *Coker*, 650 S.W.2d at 393 ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue"). Accordingly, neither party has established their entitlement to summary judgment on the cessation of payment terms of the compensation provision.

## III.    DEC's Customary Procedure for Post-Termination Payments

DEC further claims the trial court erred in granting summary judgment in favor of Ko, and in denying its motion, on Ko's breach of contract claim because its customary procedure was not to pay former contractors after their employment terminated.

With respect to DEC's "customary procedure," Ko presented evidence that three individuals, namely Parker, Cheney, and Esquivel, signed NDAs with DEC, containing compensation provisions, and received commission payments post termination. DEC countered with Smith's testimony denying that the three contractors were operating under DEC's customary procedures. She claimed Parker was starting his own company and, while he was in the process of doing so, asked Smith to let him, and his sales persons—Cheney and Esquivel—run deals through DEC's accounting system. Smith claimed DEC paid Parker the funds from any deals that he or his employees closed, and Parker distributed the money to Cheney and Esquivel based on

–10–

agreements he had with them. DEC argues that commission payments to Parker, Cheney, and Esquivel, post termination of their contracts with DEC, are the result of Parker's agreement with his contractors and do not reflect DEC's customary procedures. DEC further established through Smith's testimony that another administrative employee, similar to Ko, who received flat-fee bonuses of ten to fifteen dollars for every deal that Smith closed, received no further payment after his employment terminated.

While Smith essentially denies a direct relationship between DEC and Parker, Cheney, and Esquivel, seeking to negate a customary procedure, the summary judgment record includes NDAs between DEC and Parker, Cheney, and Esquivel, and there is evidence they received payments post termination. The fact that one administrative employee, who was receiving flat-fee bonuses, not commissions, did not receive payment post termination does not conclusively establish a "customary" procedure with respect to commissions payable to Ko. Consequently, based on the record before us, there is at least a fact issue concerning DEC's customary procedure concerning commission payments. Accordingly, neither Ko nor DEC conclusively established their right to summary judgment by virtue of the company's customary procedures. *See Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 221–22 (Tex. App.—Dallas 2008, pet. struck).

Given we have determined the summary evidence presents a genuine issue of material fact for determination by the trier of fact, we conclude the trial court erred in granting Ko's motion for summary judgment and did not err in denying DEC's motion for summary judgment on Ko's breach of contract claim. We sustain DEC's first issue as to summary judgment in favor of Ko on her breach of contract claim. We overrule DEC's second issue as to the denial of its motion for summary judgment on Ko's breach of contract claim.

Because summary judgment in favor of Ko was improper, it was likewise improper to award her attorney's fees.  To recover attorney's fees a party must prevail on its cause of action. *Sharifi v. Steen Auto., L.L.C.*, 370 S.W.3d 126, 152 (Tex. App.—Dallas 2012, no pet.).

## CONCLUSION

We reverse the trial court's judgment granting summary judgment in favor of Ko and remand the cause to the trial court for further proceedings consistent with this opinion.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

180814F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

VASSAR GROUP, INC., Appellant

No. 05-18-00814-CV     V.

HEESEON KO, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-17-02575.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

     In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

     It is **ORDERED** that appellant VASSAR GROUP, INC. recover its costs of this appeal from appellee HEESEON KO.

Judgment entered this 9th day of August, 2019.