# NO. 12-24-00016-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LYNNETTE JANUZI,*<br>*APPELLANT* | § | *APPEAL FROM THE 241ST* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *AMERICAN MODERN PROPERTY*<br>*AND CASUALTY INSURANCE AND*<br>*MELISSA ANN WORKMAN,*<br>*APPELLEE* | § | *SMITH COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Lynette Januzi appeals from the trial court's order granting summary judgment against her and in favor of American Modern Property and Casualty Insurance (AMCI) and Melissa Ann Workman. In two issues, she asserts the trial court erred in considering deemed admissions and there is more than a scintilla of evidence to support her claims. We affirm.

### BACKGROUND

In March 2019, Januzi obtained an insurance policy from her agent, Workman, through AMCI. The policy has a $300,000 policy limit, a $5,000 deductible, and a $75,000 sublimit for water damage. On August 16, 2019, Januzi reported a loss due to a plumbing failure that occurred on August 12 and resulted in water damage. AMCI acknowledged the claim on August 17, and an independent adjuster inspected the property on August 21. Based on the independent adjuster's report, AMCI issued payment totaling $13,546.43, which represented a $9,912.73 payment for the dwelling and a $3,633.70 payment for personal property. Januzi learned her claim was approved on August 29. AMCI informed Januzi that she should discuss the required

repairs with her contractor. She was also informed that should the contractor determine the funds inadequate, he should prepare an itemized breakdown for AMCI for approval and additional payment.

Januzi hired Fisher Contracting on October 29 and provided AMCI with a copy of Fisher's proposal totaling $26,640. AMCI issued additional payments to pay contractors and various damages making the total disbursement $36,226.66 as of December 4. AMCI also made several disbursements for Januzi's additional living expenses totaling $14,310. Fisher ceased working on the property and filed a notice of lien on Januzi's home claiming that it only received $8,800 of the $26,400 contract. A subsequent inspection revealed substantially the same damages previously discovered and some previously damaged items were repaired.

AMCI continued to pay Januzi's additional living expenses until March 2020. AMCI explained, via letter, that the payments ceased based on AMCI's view of the policy terms and Januzi's payment disputes and firing of her contractors. AMCI continued to reserve its rights and advised Januzi to continue providing information. AMCI requested additional information on July 13 and July 20. When Januzi did not comply with its requests for information, AMCI notified her that the claim was considered "inactive." In July 2021, AMCI received a quote for repairs and remodeling totaling $93,087. AMCI offered an additional payment in September, and a check was issued on January 11, 2022. On January 22, AMCI notified Januzi that the last payment constituted the balance of the water damage limit.

Januzi took issue with the $75,000 water damage limit, claiming she was unaware of the sublimit. She further claims that AMCI failed to adequately evaluate and pay her claim. Januzi also believes that her agent failed to provide a policy providing sufficient coverage and that there is a conspiracy between the agent and insurance company to underpay claims. She filed suit against both AMCI and Workman in April 2023 asserting multiple causes of action: breach of contract, breach of the duty of good faith and fair dealing, violations of the Deceptive Trade Practices Act, violations of the Prompt Payment Act, unfair insurance practices, common law fraud, conspiracy, negligence, negligent misrepresentation, and negligent hiring, supervision, and management. As part of the discovery process, AMCI and Workman sent Januzi requests for admissions. Although Januzi responded to other discovery requests, she did not respond to the admissions request.

In November, AMCI and Workman filed a traditional and no evidence motion for summary judgment, emphasizing that Januzi failed to respond to the admissions and that they are considered deemed admitted. Januzi responded and included affidavits and estimates as evidence of her claim. She also addressed the deemed admissions stating, "the Court retains discretion to allow Plaintiff to withdraw or amend admissions deemed because of failure to timely respond . . . Defendant ignores this possibility and prematurely claims victory." Januzi did not request the admissions be withdrawn or amended. Ultimately, the trial court granted the motion for summary judgment and dismissed Januzi's claims. This appeal followed.

## DEEMED ADMISSIONS

In her first issue, Januzi asserts that the trial court improperly considered the "deemed admissions" because they were not filed with the trial court and were contradicted by evidence.

### Standard of Review and Applicable Law

Once an action is filed, a party may serve written requests for admissions that can encompass "any matter within the scope of discovery, including statements of opinion or of fact or of the applications of law to fact . . ." TEX. R. CIV. P. 198.1; *Marino v. King*, 355 S.W.3d 629, 632 (Tex. 2011) (per curiam). If the opposing party does not serve responses to the admissions requests within thirty days, the matters in the requests are deemed admitted against the party without the necessity of a court order. TEX. R. CIV. P. 198.2(c); *Marino*, 355 S.W.3d at 633. Any matter admitted or deemed admitted is conclusively established unless the court, on motion, permits withdrawal or amendment of the admission. TEX. R. CIV. P. 198.3; *Boulet v. State*, 189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (citing *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989)).

We review a trial court's ruling on a motion to withdraw deemed admissions for an abuse of discretion. *See Wheeler v. Green*, 157 S.W.3d 439, 443 (Tex. 2005) (per curiam) ("We recognize that trial courts have broad discretion to permit or deny withdrawal of deemed admissions, but they cannot do so arbitrarily, unreasonably, or without reference to guiding rules or principles."). Withdrawal of deemed admissions is permitted upon a showing of good cause and a finding by the trial court that (1) the party relying upon the deemed admissions will not be unduly prejudiced, and (2) presentation of the merits of the action will be served. TEX. R. CIV. P.

198.3; **Marino**, 355 S.W.3d at 633.  The party seeking withdrawal of the deemed admissions has the burden to establish good cause.  **Boulet**, 189 S.W.3d at 836.

The Texas Supreme Court has held that, under special circumstances, a party may bring a request to withdraw deemed admissions for the first time in a motion for new trial.  *See* **Wheeler**, 157 S.W.3d at 442; *see also* **Marino**, 355 S.W.3d at 632–33 (holding that trial court erred in denying pro se appellant opportunity to withdraw deemed admissions, in spite of fact that she never formally made such request before trial court, because her "argument and pending motions" filed prior to rendition of summary judgment provided evidence of good cause and lack of prejudice).  However, the supreme court has also held "the equitable principles allowing these arguments to be raised in a motion for new trial do not apply if a party realizes its mistake before judgment and has other avenues of relief available."  **Wheeler**, 157 S.W.3d at 442 (citing **Carpenter v. Cimarron Hydrocarbons Corp.**, 98 S.W.3d 682, 686 (Tex. 2002)); *see also* **Unifund CCR Partners v. Weaver**, 262 S.W.3d 796, 798 (Tex. 2008) (holding that summary judgment motion put appellant on notice of deficiency of his response to requests for admissions, and, thus, appellant knew of his mistake before judgment but failed to respond, thereby waiving his right to challenge deemed admissions).

## Application

Januzi contends on appeal that (1) requests for admission must be formally presented to the court when used as summary judgment evidence, (2) requests for admission must be filed separately for the trial court to consider them deemed admitted, (3)  the certificate of service does not specify the method by which the requests were served, which she contends vitiates them being deemed admitted, (4)  the admissions are outside the scope of permissible discovery and are merits preclusive, and (5) the controverting evidence attached to her summary judgment response resulted in AMCI and Workman waiving their reliance on the deemed admissions.

We first note that Januzi did not present any of these issues to the trial court.  To preserve a complaint for appellate review, there must be a timely, specific objection and a ruling by the trial court. TEX. R. APP. P. 33.1.  The same is true in summary judgment proceedings.  TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."); *see* **LendingHome Funding Corp. v. Tuesday Real Estate, LLC**, No. 05-20-00071-CV, 2021 WL 6124319, at *12

(Tex. App.—Dallas Dec. 28, 2021, no pet.) (mem. op.) ("[A]s this issue was not presented to or adjudicated by the trial court, we cannot consider this new argument.").

In addition, Januzi has yet to request the deemed admissions be withdrawn or amended. She certainly had notice of the deemed admissions because she addressed them in her summary judgment response. As such, she waived her opportunity to challenge their validity. *See Weaver*, 262 S.W.3d at 798 (holding that summary judgment motion put appellant on notice of deficiency of his response to requests for admissions; thus, appellant knew of his mistake before judgment but failed to respond, thereby waiving his right to challenge deemed admissions).

Januzi is also incorrect in her interpretation of Texas Rule of Civil Procedure 166a(c). She contends that the admissions were not before the trial court because they were not separately filed in accordance with the rule. The rule specifically states the following:

> The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and ***other discovery responses referenced or set forth in the motion*** or response, and (ii) the pleadings, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, on file at the time of the hearing, or filed thereafter and before judgment with permission of the court, show that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

TEX. R. CIV. P. 166a (emphasis added). Therefore, because the requests for admissions were attached to the motion for summary judgment, the trial court could properly consider them. And a court order is not necessary for them to be deemed admitted. TEX. R. CIV. P. 198.2(c).

Januzi is also incorrect in her claim that her controverting evidence vitiated her deemed admissions. Once a request is deemed admitted, a responding party cannot introduce proof to controvert them. *Vise*, 767 S.W.2d at 700; *Masterson v. Hogue*, 842 S.W.2d 696, 697 (Tex. App.—Tyler 1992, no writ). Thus, the deemed admissions were the controlling evidence before the trial court at the hearing on the motion for summary judgment, and the court could not properly have considered affidavits that attempted to controvert those admissions. *Beasley v. Burns*, 7 S.W.3d 768, 770 (Tex. App.—Texarkana 1999, pet. denied); *Goss v. Bobby D. Assocs.*, 94 S.W.3d 65, 71-72 (Tex. App.—Tyler 2002, no pet.).

Because the trial court could properly consider the deemed admissions, we overrule Januzi's first issue.

### SUMMARY JUDGMENT

In her second issue, Januzi contends fact issues exist precluding summary judgment.

**Standard of Review**

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003); *McMahon Contracting, L.P. v. City of Carrollton*, 277 S.W.3d 458, 467–68 (Tex. App.–Dallas 2009, pet. denied). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant; and (3) the court must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co. Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 311 (Tex. 1984); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 221–22 (Tex. App.–Dallas 2008, pet. struck). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952); *Palestine Herald-Press Co. v. Zimmer*, 257 S.W.3d 504, 508 (Tex. App.–Tyler 2008, pet. denied).

Further, all theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c). If the trial court's order granting summary judgment does not specify the grounds relied on for its ruling, we will affirm it if any of the theories advanced are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Additionally, after an adequate time for discovery, a party without the burden of proof at trial may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense. *See* TEX. R. CIV. P. 166a(i). Once a no evidence motion has been filed in accordance with Rule 166a(i), the burden shifts to the nonmovant to bring forth evidence that raises a fact issue on the challenged evidence. *See Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.–Houston [1st Dist.] 1999, no pet.). We review a no evidence motion for summary judgment under the same legal sufficiency standards as a directed verdict. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003). A no evidence motion is

properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See id*. at 751. If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Id*. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *See id*.

## Analysis

Januzi asserted multiple causes of action against AMCI and Workman. Those included breach of contract, unfair settlement practices, misrepresentation of material facts, fraud, negligence, breach of the duty of good faith and fair dealing, and a failure to investigate her claim.[1] All of Januzi's claims are rooted in her assertions that AMCI failed to adequately pay her claim and inform her of the policy limits, and that she should have had higher insurance limits. Therefore, if AMCI paid the policy limits in accordance with the policy, and Januzi knew the policy's terms and approved the coverage amounts, then Januzi's claims against AMCI fail. In addition, if Januzi consented to the policy terms, her claims against Workman also fail. Both payment under the policy and Januzi's consent formed the basis of AMCI's and Workman's traditional motion for summary judgment.

In their motion, AMCI and Workman specifically relied on the following deemed admissions:

> Admit that you signed the application for the insurance policy attached as Exhibit A (Signed Homeowner Application).

> Admit that you authorized and approved the insurance coverage amounts stated in the application for insurance.

> Admit you never had any written communication with Melissa Workman regarding the need for additional coverage amounts.

> Admit that you fired Fisher Construction while they were performing the work.

> Admit that the insurance carrier did not hire Fisher Construction.

> Admit that you hired Fisher Construction.

---

[1] Januzi also asserted causes of action for violation of the prompt payment act, failure to timely acknowledge her claim, conspiracy, and negligent hiring, supervision, and management. However, Januzi either concedes there is no evidence to support these claims or does not point to any evidence in support of them in her brief.

Admit that you were aware of the water damage limit at the time you signed the application for the insurance policy found in Exhibit A (Signed Homeowner Application).

Admit that the water damage limit under the policy is $75,000.

Admit that Defendant paid the water damage limit of $75,000.

Admit that you hired numerous plumbers during the pendency of the claim.

Admit that Exhibit B, Dream Maker Bath & Kitchen Estimate, included numerous repairs not associated with the water damage claim.

Admit you requested all kitchen appliances be replaced due to dry wall dust from the contractors you hired.

Admit that you replaced items and made upgrades to the insured property that were not part of the water damage claim.

Admit that Dream Maker Bath & Kitchen provided an estimate for a remodel to the insured property.

Admit that you hired Riley Construction to prepare an estimate.

Admit that you wanted Riley Harris Construction to replace all items previously installed by your prior contractors.

Admit the majority of the damages to the insured property were caused by the contractors you hired.

Admit that you want your insured property remodeled.

Admit that you never hired Riley Harris Construction to perform repair work.

Admit the tile shower, toilet and vanity in the master bath were not damaged by the water leak made the basis of this water damage claim.

Admit that you paid for the tile shower, toilet and vanity in the master bath out of the insurance proceeds from the water damage claim.

Admit water damage limits of $75,000 were paid under the Policy by 1-20-22.

Admit that Smith County appraised the insured property for 2023 at $122,115.

Admit that Smith County appraised the insured property for 2019 at $92,004.

These admissions establish that Januzi was aware of the policy limits when she purchased her homeowner's policy from Workman and that those limits include a $75,000 sublimit for water damage. They also establish that AMCI made payments totaling that $75,000 limit.

Januzi's claims against AMCI for breach of contract, misrepresentation of material facts, unfair settlement practices, breach of the duty of good faith and fair dealing, and a failure to investigate her claim are based on her assertion that she should have been paid more than

$75,000 for her claim. She asserts that because her damages exceed the $75,000 she was paid, AMCI has not fulfilled its duty as her insurer. However, in her deemed admissions, Januzi concedes that the water damage limit in the policy is $75,000 and that AMCI paid those limits. And Januzi cannot offer any evidence to the contrary. *See Beasley*, 7 S.W.3d at 770.

Januzi's causes of action against Workman for negligence, fraud, and negligent misrepresentation are rooted in her accusation that Workman, an insurance agent, represented that the policy "covered her needs fully" and that "she had the correct coverage." Januzi argues that the water damage limit is inadequate and she was unaware of the limit until after she made her claim. In the deemed admissions, Januzi admits that she authorized and approved the insurance amounts stated in her application, that she knew of the water damage limit at the time she signed the insurance application, and that the water damage limit is $75,000. She further admits that she did not communicate any need for additional coverage to Workman. Therefore, the evidence establishes that Januzi was aware of and consented to the policy limits prior to her insurance claim, and Januzi cannot offer any conflicting evidence. *See id.*

For these reasons, we conclude that the evidence establishes that AMCI complied with the policy terms and paid the policy limits in accordance with the policy, as well as Januzi's knowledge and consent to the policy terms. Thus, the trial court did not err in granting summary judgment. We overrule Januzi's second issue.

## DISPOSITION

Having overruled Januzi's first and second issues, we ***affirm*** the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered August 29, 2024.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 29, 2024**

**NO. 12-24-00016-CV**

**LYNNETTE JANUZI,**
Appellant
V.
**AMERICAN MODERN PROPERTY AND CASUALTY INSURANCE AND MELISSA
ANN WORKMAN,**
Appellee

Appeal from the 241st District Court
of Smith County, Texas (Tr.Ct.No. 23-0874-C)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED, and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, Lynette Januzi, for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*