LEARNERS ONLINE, INC., Appellant,

v.

DALLAS INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 05–08–00946–CV.

Court of Appeals of Texas, Dallas.

July 20, 2009.

Chad Michael Ruback, The Ruback Law Firm, Dallas, TX, for Appellant.

Carlos G. Lopez, Esq., Jamison Newberg, Vincent Lopez Serafino & Jenevein, P.C., for Appellee.

Before Justices FITZGERALD, LANG, and SMITH.[1]

## OPINION

Opinion By Justice LANG.

Learners Online, Inc. appeals the trial court's take-nothing summary judgment on its breach of contract claim against the Dallas Independent School District (DISD) pursuant to Texas Local Government Code section 271.153. *See* TEX. LOCAL GOV'T CODE ANN. § 271.153 (Vernon 2005). In one issue, Learners Online asserts the trial court erred when it granted DISD's motion for summary judgment and impliedly

1. The Honorable Bea Ann Smith, Justice, Court of Appeals, Third District of Texas at Austin, Retired, sitting by assignment.

denied Learners Online's motion for summary judgment.

This case requires us to interpret sections 271.151(2) and 271.152 of the local government code to determine whether certain documents, alleged by Learners Online to constitute a contract with DISD, meet the requirements of those sections to constitute a limited waiver of governmental immunity, thereby allowing this action to proceed. *See id.* §§ 271.151(2), 271.152. We conclude the requirements of sections 271.151(2) and 271.152 have not been met and there has been no waiver of immunity from suit. The trial court's summary judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2002, DISD submitted an application to the U.S. Department of Education for a three-year "Teaching American History" grant. Prior to submitting the application, DISD met with the three "partners" named in the grant application, including Learners Online, to establish the project "services" to be proposed in the grant application and negotiate the price for each service over a three-year term. Attached to the grant application was a list of proposed services and a budget summary that listed a dollar amount for each service included in the grant application. The grant application was reviewed and approved by DISD's legal department, purchasing department, and curriculum instruction department before it was submitted. Mike Moses, the DISD superintendent, signed the grant application as DISD's "authorized representative." The language above the signature line for the "authorized representative" stated: "To the best of my knowledge and belief, all data in this preapplication/application are true and correct. The document has been duly authorized by the governing body of the applicant and the applicant will comply with the attached assurances if the assistance is awarded."

In the grant application, DISD described each proposed project goal and the specific responsibilities of each "partner" by proposed goal. The second project goal, for which Learners Online was identified as a "partner," was to "[i]mprove teacher's knowledge of U.S. History content by offering a series of web-based and CD-based professional development modules targeting standards-based history content. . . ." Learners Online was to provide: twelve online teacher training modules aligned to the Texas state objectives for American history, including eighty instructional guides; eighty student web lessons; twenty professional development sessions; online e-mail support for teachers; online multimedia demonstrations of "appropriate pedagogical use of training materials"; online surveys of "teacher practices and evaluation of modules"; and usage reports. The budget provided in the grant application for the part of this project on which Learners Online was to work totaled $265,000.

DISD stated in the application, if it were successful, DISD would "immediately advise Learners on Line [sic] to complete the 12 customized professional development modules and 80 Web Lessons according to standards-based specifications." Further, DISD stated "[t]he website will be on-line in October 2002." Also, DISD attached a memorandum of understanding (MOU) DISD executed with Learners Online, dated May 20, 2002, and signed by Moses, DISD's executive director of social studies, Larry Harmon, and Learners Online's president, Mary Ashmore.

The MOU executed between Learners Online and DISD stated in its entirety:

> If this application to the Teaching American History Grant Program is successful, the Dallas Independent School Dis-

trict will sub-contract with Learners On–Line [sic] to implement the program described in this application. Learners On–Line [sic] will be responsible for providing services that fulfill program goal #2, including the development of twelve on-line teacher training modules, on-line email support, on-line surveys, and annual usage reports. Learners On–Line [sic] will maintain a financial accounting for the money spent as a part of their sub-contract of this program.

The U.S. Department of Education awarded the grant to DISD on September 27, 2002. DISD "immediately" called Ashmore to advise Learners Online to begin developing the teacher training modules and student web lessons. Learners Online presented three work-in-progress samples to DISD. According to DISD, all three samples were deficient.

The first sample was sent in late October. Harmon met with Ashmore on October 28, 2002, to discuss the revisions required due to specific deficiencies, namely that the module was "geared toward" students rather than professional development of the DISD teachers and the module did not meet Texas Essential Knowledge and Skills (TEKS) requirements. Ashmore agreed to provide a redesigned module to DISD by November 8, 2002. In an email of October 30, 2002, Ashmore specifically requested payment to proceed, informing Harmon that Learners Online was "chomping at the bit to kick off this program, but need[ed] the initial funding installment to initiate the full-blown development and production of the modules. I trust once you have approved the sample module you receive on the 8th of November you will immediately forward our initial installment. If this is incorrect please contact me as soon as possible."

After receiving the redesigned module, Harmon advised Ashmore the second module was deficient for four specific reasons,

including that it lacked resources aligned to the TEKS requirements. Harmon informed Ashmore by email that "in order to provide our staff the promised resources, I am obligated to research other professional development options" related to the services that Learners Online would have provided. Ashmore discussed this email with Harmon and indicated she would submit a "tailored revision" of the module by December 2, 2002. On December 2, after receiving the "revision," Harmon notified Ashmore the modules "presented" by Learners Online "over the last 5 months have not been and are not currently acceptable" and advised Ashmore that Learners Online "will not participate as a DISD vendor with the Teaching American History Grant."

In April 2003, DISD issued a request for proposal for "on-line professional development and student lesson modules," selected another source provider or "partner," and executed a service contract form and a professional services contract with that "partner." As required by district policy, the contract documents were submitted to DISD's Board of Trustees and approved.

Learners Online filed suit claiming breach of contract, alleging the grant application, which included the MOU executed on May 20, 2002, was a professional services contract that was breached by DISD. Learners Online sought damages pursuant to Texas Local Government Code section 271.153, including the $265,000 described in the budget for the second project goal on which Learners Online was to work, and pre- and post-judgment interest. DISD answered and asserted, inter alia, the affirmative defense of governmental immunity. Then, DISD filed a motion for both traditional and no evidence summary judgment, asserting governmental immunity and specifically asserting, among other things, there was no contract between

Learners Online and DISD because the documents Learners Online "relied upon" did not "set forth the essential terms of the agreement" pursuant to section 271.151(2) and were "neither executed nor approved" by DISD's Board of Trustees.

Learners Online responded by filing a cross-motion for summary judgment, asserting (1) the MOU and grant application established the services and specific monetary payments for each service, (2) there was a meeting of the minds that Learners Online would provide the professional services if the grant application was awarded to DISD, and (3) DISD ratified the contract by accepting the grant from the U.S. Department of Education. After a hearing, the trial court granted summary judgment in favor of DISD. Learners Online's subsequently filed motion for new trial was overruled by operation of law. This appeal timely followed.

## II. SUMMARY JUDGMENT PURSUANT TO SECTION 271.152

In a single issue, Learners Online asserts the trial court erred when it granted DISD's motion for summary judgment and that Learners Online was entitled to traditional summary judgment. Specifically, Learners Online contends it showed (1) there was an enforceable contract under common law principles and pursuant to Texas Local Government Code sections 271.151(2) and 271.152, and (2) that DISD did not establish there was not an enforceable contract as a matter of law. Further, Learners Online asserts DISD was not entitled to no-evidence summary judgment because the MOU and grant application presented "some evidence" of the parties' intent to create a contract, contained the essential terms required to form a contract, and were properly executed. Also, Learners Online asserts DISD repudiated the contract prior to the deadline for Learners Online to perform under the contract.

DISD responds DISD is immune from Learners Online's claims because the MOU and grant application do not "set forth the essential terms" of a contract and were not properly executed by DISD "as required for a waiver of immunity pursuant to Texas Local Government Code section 271.152." Also, DISD argues, among other things, there was no evidence creating a fact issue as to the existence of a valid contract at common law or pursuant to the requirements of section 271.152.

### A. Standard of Review

#### 1. Summary Judgment

■ Governmental immunity may be raised in a plea to the jurisdiction or in a motion for summary judgment. *See, e.g., Harris County v. Sykes,* 136 S.W.3d 635, 638 (Tex.2004). Because DISD raised governmental immunity in its motion for summary judgment, we apply the standard of review for summary judgments.

Because summary judgment is a question of law, a trial court's summary judgment decision is reviewed de novo. *See Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex.2005); *McMahon Contracting, L.P. v. City of Carrollton,* 277 S.W.3d 458, 467 (Tex.App.-Dallas 2009, pet. denied). The standard of review for a traditional summary judgment motion pursuant to Texas Rule of Civil Procedure 166a(c) is threefold: (1) the movant must show there is no genuine issue of material fact and he is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed, material fact issue precluding summary judgment, the court must take as true evidence favorable to the nonmovant; and (3) the court must indulge every reasonable inference from the evidence in favor of the nonmovant and resolve any doubts in the nonmovant's favor.

*See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *McMahon Contracting, L.P.,* 277 S.W.3d at 467.

When the trial court does not specify the basis for its summary judgment, the appealing party must show on appeal that each independent ground alleged is insufficient to support the summary judgment granted. *See W. Invs., Inc. v. Urena,* 162 S.W.3d 547, 550 (Tex.2005); *Ogg v. Dillard's, Inc.,* 239 S.W.3d 409, 416–17 (Tex. App.-Dallas 2007, pet. denied). Where both parties move for summary judgment, an appellate court is to review the summary judgment evidence of both parties, determine all questions presented, and either render the judgment that the trial court should have rendered or remand if neither party met its summary judgment burden. *See FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex. 2000); *Sadeghi v. Gang,* 270 S.W.3d 773, 776 (Tex.App.-Dallas 2008, no pet.).

### 2. Statutory Construction

■ Matters of statutory construction are questions of law for the courts to decide and therefore, subject to de novo review. *Johnson v. City of Fort Worth,* 774 S.W.2d 653, 656 (Tex.1989); *Jones v. State,* 175 S.W.3d 927, 930 (Tex.App.-Dallas 2005, no pet.). In construing a statute, a reviewing court should determine and give effect to the legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000); *Jones,* 175 S.W.3d at 930. If the statutory language is unambiguous, a reviewing court adopts, with few exceptions, the interpretation supported by the plain meaning of the provision's words and terms. *See Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 865–66 (Tex.1999); *see also Allen,* 15 S.W.3d at 527. If a statute is unambiguous, rules of construction or other extrinsic aids cannot be used to create ambiguity. *Fitzgerald,* 996 S.W.2d at

866; *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997); *accord Burlington N. R.R. Co. v. Okla. Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 95 L.Ed.2d 404 (1987). When we interpret a code enacted by the legislature, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 2005); *Jones,* 175 S.W.3d at 930. Words are given their ordinary meaning. *See Fitzgerald,* 996 S.W.2d at 866; *Jones v. Fowler,* 969 S.W.2d 429, 431 (Tex.1998); *Jones,* 175 S.W.3d at 930. Words defined in dictionaries and with meanings so well known as to be understood by a person of ordinary intelligence are not to be considered vague and indefinite. *Jones,* 175 S.W.3d at 930. The use of legal or other well-accepted dictionaries is a permissible method of determining the ordinary meaning of certain words. *See id.; Pratt–Shaw v. Pilgrim's Pride Corp.,* 122 S.W.3d 825, 833 (Tex. App.-Dallas 2003, pet. denied). However, words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, are construed accordingly. *See Jones,* 175 S.W.3d at 930–31 (citing TEX. GOV'T CODE ANN. § 311.011(b)).

### B. Applicable Law

■ Sovereign immunity refers to the State's immunity from suit and liability. In addition to protecting the State from liability, it also protects the various divisions of state government, including agencies, boards, hospitals, and universities. Governmental immunity, on the other hand, protects political subdivisions of the State, including counties, cities, and school districts. *Tooke v. City of Mexia,* 197 S.W.3d 325, 369 n. 11 (Tex.2006) (quoting *Wichita Falls State Hosp. v. Taylor,* 106 S.W.3d 692, 694 n. 3 (Tex.2003) (citations omit-

ted)); *see also Ben Bolt–Palito Blanco Consol. Indep. Sch. Dist. v. Political Subdivisions Prop./Casualty Joint Self–Insurance Fund*, 212 S.W.3d 320, 323–24 (Tex. 2006). As governmental immunity is applicable here, we refer to sovereign immunity only when discussing statutes using that term which are applicable in this case.

Governmental immunity includes both immunity from suit and immunity from liability. *See Ben Bolt–Palito*, 212 S.W.3d at 324; *Tooke*, 197 S.W.3d at 332. Immunity from liability bars enforcement of a judgment against a political subdivision of the State, such as a school district. *See Ben Bolt–Palito*, 212 S.W.3d at 324. A political subdivision waives immunity from liability by entering into a contract and voluntarily binding itself to the terms of the agreement. *See Tooke*, 197 S.W.3d at 332.

▬▬▬ "[E]ven if the State acknowledges liability on a claim, immunity from suit bars a remedy until the Legislature consents to suit." *Ben Bolt–Palito*, 212 S.W.3d at 324 (citing *Taylor*, 106 S.W.3d at 695). To ensure legislative control over that immunity is "not lightly disturbed," that waiver must be "clear and unambiguous." *Id.* at 327 (quoting TEX. GOV'T CODE ANN. § 311.034); *see also Tooke*, 197 S.W.3d at 333. A public school district does not waive immunity from suit when it enters into a contract except as provided by section 271.152 of the local government code. *See* TEX. LOCAL GOV'T CODE ANN. § 271.152.

Section 271.152 waives immunity from suit regarding a claim for breach of contract against a "local governmental entity" authorized by statute or the constitution to enter into a contract. *See id.* A "local government entity" is a political subdivision of the State, including a public school district. *See id.* § 271.151(3). Accordingly, under section 271.152, political subdivisions that enter into contracts "subject to this subchapter waive[ ] sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract." *Id.* § 271.152; *see also Tooke*, 197 S.W.3d at 344–45. To the extent "sovereign immunity" was not waived before the effective date of the 2005 amendments to the statute, the waiver of "sovereign immunity" applies retroactively for sections 271.152–271.154. *See* TEX. LOCAL GOV'T CODE ANN. §§ 271.152–.154; *Tooke*, 197 S.W.3d at 344–45; *McMahon Contracting, L.P.*, 277 S.W.3d at 464. However, contracts subject to the waiver include only "written contract[s] stating the essential terms of the agreement for providing goods or services to the local governmental entity that [are] properly executed on behalf of the local government entity." TEX. LOCAL GOV'T CODE ANN. § 271.151(2). Further, section 271.153 limits the damage award available in a suit against a local governmental entity to "(1) the balance due and owed by the local governmental entity under the contract …; (2) the amount owed for change orders or additional work the contractor is directed to perform by a local government entity in connection with the contract; and (3) interest as allowed by law." *See id.* § 271.153.

## C. Application of the Law to the Facts

▬▬▬ Learner's Online contends the MOU and grant application constitute a contract that meets the requirements of section 271.152 when reviewed under common law principles, citing to us the Texas Supreme Court case of *Foreca v. GRD Development Company. See Foreca, S.A. v. GRD Dev. Co.*, 758 S.W.2d 744, 746 (Tex.1988). Learners Online advises that under common law, the finder of fact will determine whether the parties intended the terms of an agreement to be the "final expression of the agreement." *See id.* (fact finder entitled to determine whether

"writings" were preliminary negotiations or "final expressions of the contract" where documents included purchase price, terms of payment, delivery information, and warranties, but also said agreement was "subject to legal documentation contract to be drafted by [attorney]"). Further, as Learners Online acknowledges, the question of whether a particular agreement constitutes an enforceable contract is generally a question of law. *See Sadeghi*, 270 S.W.3d at 776. However, our analysis focuses upon the specific requirements of sections 271.151(2) and 271.152. Those statutory sections state that in order for immunity from suit to be waived to proceed with a breach of contract claim against a public school district the evidence must show there exists (1) a "written contract stating the essential terms of the agreement" that is (2) "properly executed on behalf of the local government entity." Tex. Local Gov't Code Ann. §§ 271.151(2), 271.152. Where, as here, the issue is not whether the parties intended the terms of the agreement to be its "final expression," but rather whether immunity from suit was waived pursuant to specific statutory requirements, we must first resolve whether the statutory requirements were met. *See id.* §§ 271.151(2), 271.152.

Our first step in addressing the issues in this case is to determine whether the evidence demonstrates the purported "written contract" states "the essential terms of the agreement." *See id.* § 271.151(2). Neither section 271.151 nor the local government code defines the words or phrase "essential terms of the agreement." Accordingly, we look to the ordinary, plain meaning of those words. *See Fitzgerald*, 996 S.W.2d at 865–66. Dictionaries may provide assistance in finding ordinary meaning. *See Jones*, 175 S.W.3d at 930; *Pratt–Shaw*, 122 S.W.3d at 833. The *Weber's New Collegiate Dictionary* defines "essential" as "of utmost im-

portance: BASIC, INDISPENSABLE, NECESSARY." Webster's Ninth New Collegiate Dictionary 425 (1985). Further, some general contract law is helpful to us in this analysis. We have previously stated a contract must define its "essential terms with sufficient precision to enable the court to determine the obligations of the parties" and that the parties must agree to those terms before a court may enforce the contract. *COC Servs., Ltd., v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App.-Dallas 2004, pet. denied). "Where an essential term is open for future negotiation, there is no binding contract." *Id.* (quoting *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex.1992)). "Essential terms" of a contract may include time of performance, price to be paid, work to be done, service to be rendered, or property to be transferred. *See id.*

Learners Online argues when the MOU and grant application are read together as one document forming the contract, all essential terms are stated, including the specific software Learners Online is to create, time for performance and payment, and sums to be paid. As to the time for performance and payment, Learners Online contends we need only look to the language of a chart attached to the grant application. The chart was attached to the grant application to identify the components of each project goal for which the grant was sought. The part of the chart relating to the project goal in which Learners Online was to be a "partner" listed specific parts of the project Learners Online was to "provide" in the first column on the left side of the page, e.g. "80 student WebLessons." Then, from the middle to the right side of the page, three separate columns are set out for the "academic years" 2002–2003, 2003–2004, and 2004–2005. Beneath each academic year, sums of money were listed for each part of

the project to be provided by Learners Online as identified in the far left column. According to Learners Online, this description in the chart means that performance of the specific services listed by "academic year" may be accomplished, and payment therefore may be made to Learners Online, any time before the end of the identified "academic year" or school year, e.g. 2002–2003. However, Learners Online's explanation does not identify when the listed services are to be completed and in what sequence during each "academic year" or whether payment is to be made in installments or even a lump sum at the end of the school year.

We also note the summary judgment evidence shows Learners Online's expectations were different from its argument as to the payment terms. Learners Online communicated to DISD its need for payments pursuant to some unspecified installment schedule, but apparently not in a lump sum on the last day of the 2002–2003 academic year. Ashmore wrote in an October 30, 2002 email Learners Online "need[ed] the initial funding installment to initiate the full-blown development and production of the modules." Also, Ashmore stated in her email she expected to receive partial payment in November 2002, after the sample module was approved by DISD: "I trust once you have approved the sample module you receive on the 8th of November you will immediately forward our initial installment." This email communication demonstrates the parties had not agreed on the payment terms more than a month after the grant was awarded to DISD.

Finally, DISD points to the language of the MOU itself as demonstrating an absence of the "essential terms" of any agreement, where the MOU says, "If the application ... is successful, [DISD] *will sub-contract* with Learners On–Line [sic] to implement the program described in

this application" (emphasis added). In its motion for summary judgment, DISD described this language as "preliminary" because no such sub-contract was executed. We agree. The MOU, even when read in conjunction with the grant application, does not identify the "essential terms of the agreement" to be included in such a sub-contract. *See id.* The parties agreed only that upon the acceptance of the application, they would craft the terms of a sub-contract to "implement the program." *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex.2000) ("It is well settled law that when an agreement leaves material matters open for future adjustment and agreement that never occur, it is not binding upon the parties and merely constitutes an agreement to agree."); *see also Shaw v. Palmer*, 197 S.W.3d 854, 856 (Tex.App.-Dallas 2006, pet. denied) (same).

Accordingly, we conclude the documents alleged by Learners Online to constitute a contract satisfying the requirements of section 271.152, do not contain the "essential terms of the agreement" for providing services as required by sections 271.151(2) and 271.152. As a result of that conclusion, we need not decide whether the documents were "properly executed" as also required by the statute. *See* TEX. LOCAL GOV'T CODE ANN. § 271.151(2). Further, because we determine as a matter of law that under section 271.152 there was no contract, we need not address Learners Online's repudiation argument.

We decide against Learners Online on its sole issue.

## III. CONCLUSION

We conclude the requirements of sections 271.151(2) and 271.152 were not met and there has been no waiver of immunity

from suit. The trial court's summary judgment is affirmed.