**Reverse and Render and Opinion Filed October 21, 2022**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-21-00101-CV

**STACEY DORFMAN KIVOWITZ, SAMUEL GRANT DORFMAN,
AND SCI TEXAS FUNERAL SERVICES, LLC
D/B/A SPARKMAN/HILLCREST FUNERAL HOME
AND D/B/A HILLCREST MAUSOLEUM AND MEMORIAL PARK,
Appellants
V.
LOUIS DORFMAN, SR., Appellee**

**On Appeal from the 14th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-19-13563**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Smith
Opinion by Justice Osborne

This case arises from appellee Louis Dorfman, Sr.'s request to SCI Texas

Funeral Services, LLC d/b/a Sparkman/Hillcrest Funeral Home and d/b/a Hillcrest

Mausoleum and Memorial Park ("Hillcrest") to remove his deceased parents'

remains from mausoleum crypts on Hillcrest's property. The trial court rendered

judgment for appellee in his suit for declaratory relief and awarded him $191,254.95

in attorney's fees from Hillcrest. In two issues, Hillcrest contends the trial court's

judgment contravenes Chapter 711 of the Texas Health and Safety Code and the attorney's fees award is not equitable or just. Appellants Stacey Dorfman Kivowitz and Samuel Grant Dorfman, third-party defendants in the trial court, also assert six issues challenging the trial court's judgment.

For the reasons that follow, we sustain Hillcrest's first issue. We also sustain Stacey Dorfman Kivowitz and Samuel Grant Dorfman's first issue, concluding that a release agreement in a previous lawsuit bars appellee Louis Dorfman Sr.'s claims here. We pretermit discussion of other issues unnecessary to our disposition. We reverse the trial court's judgment and render judgment that appellee take nothing on his claims.

## BACKGROUND

Louis[1] is the only living child of decedents Samuel Yandell Dorfman, Sr. and his wife Elizabeth F. Dorfman ("Decedents"). Stacey and Grant are the adult children of Louis's deceased brother, Samuel Yandell Dorfman, Jr. and the grandchildren of Decedents.

After their father's death in September 2014, Stacey and Grant purchased a mausoleum crypt at Hillcrest for his interment. Around the same time, they purchased interment rights for the Decedents to be interred in mausoleum crypts at Hillcrest next to their father's. They made arrangements to transfer the Decedents'

---

[1] We refer to Dorfman family members by their first names for clarity.

remains from their then-existing resting place at Restland Funeral Home and Cemetery. In the process, Stacey represented to Hillcrest that she had the rights of interment with respect to Decedents' remains. She signed two interment orders and authorization documents in which she represented to Hillcrest that she was the Decedents' legal next-of-kin and had the full legal authority to direct the interment of their remains.

In accordance with Stacey's authorization, the Decedents' remains were transferred to Hillcrest in September 2015. It is not disputed that at the time of the transfer, Hillcrest was not aware that Louis was Decedents' sole surviving adult child and statutory next-of-kin with respect to the disposition of Decedents' remains.

Louis contends he learned of the transfer in January 2017; Stacey and Grant contend they discussed the transfer with Louis after Samuel, Jr.'s death in 2014. It is not disputed, however, that Louis was aware of the transfer before he signed a settlement agreement in a previous lawsuit in which he was plaintiff and Grant and Stacey were defendants ("the 2017 Lawsuit").

In the 2017 Lawsuit, Louis pleaded:

**The Re-interment**

21. Without Louis's knowledge or consent, Grant and Stacey arranged by deceit and misrepresentations to disinter the remains of Louis's parents from Restland Memorial Park and transfer them to the Sparkman-Hillcrest Memorial Park. Because only the next-of-kin can authorize such a transfer and they did not wish to alert Louis that his parents' remains were being transferred, Grant and Stacey signed forms that falsely represented to Restland and the Texas Department of Health that there were no living relatives, including Louis, who preceded them

–3–

in degree of kindred. When they signed those forms, they knew they would be sent to state authorities and relied upon to obtain permits for Louis's parents' disinterment, transfer, and reinterment. Grant and Stacey also knew that the statements they had made were false. They obviously knew that Louis was his parents' only living child and, therefore, their next of kin.

22. Grant and Stacey also re-interred Louis's parents with Sam in between them, defying their wishes to be buried together. This configuration also willfully defied Sam's wishes, as expressed in his Will, to have his longtime girlfriend buried next to him.

23. In September 2015, shortly after Louis's parents were transferred from Restland to Sparkman-Hillcrest, a process that took roughly a year to complete, Grant and Stacey held a ceremony to commemorate the one-year anniversary of Sam's death and to recognize the re-burial of Louis's parents next to Sam. Grant and Stacey never informed Louis that this ceremony was taking place and Louis did not learn about it until long after it occurred.

24. In January 2017, Louis's son, Mark, notified Louis that his parents' remains had been transferred from Restland to Sparkman-Hillcrest, which came as shocking news to Louis and caused him to suffer great emotional distress and anguish.

Based on these facts, Louis pleaded causes of action in the 2017 Lawsuit for wrongful disinterment and intentional infliction of emotional distress, relying on sections 711.004 and 711.052 of the Texas Health and Safety Code.

The parties settled the 2017 Lawsuit by a March 23, 2018 "Settlement Agreement and Mutual Release" (the "Release"). The Release was signed by Louis, Stacey, Grant, and others, and it included provisions regarding Stacey's and Grant's transfer of their grandparents' remains:

WHEREAS, Louis contended in the Lawsuit, among other things, that Grant and Stacey arranged to transfer the remains of his parents to a different cemetery in Dallas and Louis also alleged that this transfer

–4–

took place without his knowledge, consent, or approval, which caused him to suffer emotional distress;

WHEREAS, the Parties agreed to settle their claims and the Lawsuit and to fully resolve, settle, and dispose of all claims, litigation, and disputes between them (whether known or unknown) . . . .

NOW, THEREFORE, . . . the Parties . . . do hereby agree to compromise and settle their disputes as follows: . . .

8. Release by Louis. . . . Louis . . . does hereby compromise, settle, quit claim, waive, fully release, and forever discharge, Grant, Stacey [and others] . . . of and from all claims, demands, controversies, actions, debts, damages, obligations, liabilities, costs, fees and/or causes of action of any kind that Louis has asserted or could have asserted in the Lawsuit . . . . This release is therefore a full, final release and discharge by Louis of the Lawsuit, including but not limited to a release of all claims he could have filed in the Lawsuit against Grant, Stacey, [and others], relating in any way to . . . **(iv) the transfer, disposition, or handing of the remains of Louis' parents.** This release is intended to include a release of all claims, whether known or unknown by Louis at the time of settlement against Grant, Stacey [or others], whether these claims are fixed or contingent, liquidated or unliquidated, accrued or unaccrued, asserted or unasserted, past, present and future, and which Louis has, or ever had, owned or assigned. Louis hereby further covenants not to sue Grant, Stacey [or named others] . . . for any and all claims, causes of action, debts, or other demands that are released by the terms of this Settlement Agreement. . . . [Emphasis added]

The Release was mutual; it included Stacey's and Grant's release of all claims against Louis "relating in any way" to "the transfer, disposition or handling of the remains of Louis' parents."

Next, Louis filed suit in June 2018 against Restland for the improper transfer of Decedents' remains. That lawsuit was ultimately settled and dismissed in May 2019 after a jury awarded Louis $200,000 in mental anguish damages from Restland. Although Stacey and Grant were not parties to the lawsuit, they were included in the

–5–

jury charge, and the jury found that they were negligent and committed fraud against Louis. The jury made only a negligence finding against Restland.

Louis then filed this lawsuit against Hillcrest in August, 2019. Complaining that Hillcrest, despite Louis's demands, "still requires a court order declaring that [Louis] has the right to remove his parents' remains from the mausoleum and crypts where they are buried notwithstanding his niece and nephew's refusal to consent to that removal," Louis sought declarations that:

a.    "he has the absolute legal right to control the disposition of his parents' remains" and "must be permitted to remove and transfer those remains" "notwithstanding any objections" by Stacey or Grant, and

b.    all contracts between Sparkman and Stacey and/or Grant regarding Decedents' remains are void.

Louis also pleaded for "attorneys' fees, damages, and court costs."

Hillcrest answered and sought a declaratory judgment "as to the individual(s) who have the right to control the location of Decedents' remains under the applicable documents and Texas statutory law." Asserting a counterclaim against Louis and a third party claim against Stacey and Grant, Hillcrest alleged that the parties had competing claims to the remains and Hillcrest could not comply with them both. Hillcrest contended it could not follow Stacey and Grant's direction to leave Decedents' remains in their current location "without being sued by" Louis, the next-of-kin "who has the right to control" disposition of the remains. But "[a]t the same time, [Hillcrest] cannot abide by [Louis's] requests for removal of Decedents' remains without [Stacey and Grant's] consent under Texas statutory law requiring

–6–

the plot owner's consent for such action." Hillcrest concluded, "This state of affairs, occasioned solely by a family dispute over which [Hillcrest] has no control, and which [Hillcrest] cannot resolve, is untenable and inequitable to [Hillcrest]."

Both Louis and Hillcrest moved for summary judgment, and Stacey and Grant responded. The trial court granted summary judgment for Louis and subsequently awarded attorney's fees against Hillcrest.

In its Amended Final Judgment rendered on January 12, 2021, the trial court granted declaratory relief to Louis:

a.  voiding Hillcrest's contract with Stacey and Grant[2] to the extent it dispossessed Louis of his rights regarding his parents' remains,

b.  declaring that Louis "has the absolute legal right to control the disposition of his parents' remains" and "must be permitted to remove and transfer those remains" "notwithstanding any objections [Stacey and Grant] have made to that removal and transfer," and

c.  declaring that none of Louis's parents' relatives or descendants shall be permitted to remove Louis's parents' remains after Louis re-inters them.

The trial court also awarded additional attorney's fees against Hillcrest for amounts Louis incurred responding to Stacey and Grant's plea to the jurisdiction and motion to reconsider the summary judgment order. In its final judgment, the trial court awarded Louis a total of $191,254.95 in attorney's fees from Hillcrest

---

[2] The Amended Final Judgment recites that Hillcrest, Stacey, and Grant reached a settlement in October 2020 that resolved all of Hillcrest's claims against Stacey and Grant.

"incurred in pursuit of the declaratory relief granted him" and an additional $75,000 in conditional appellate fees. This appeal followed.

In two issues, Hillcrest contends the trial court erred by rendering judgment for Louis because (1) Louis's declaratory judgment action circumvented the applicable health and safety code provisions, and (2) the award of attorney's fees is not equitable and just where Hillcrest's actions were in strict accordance with section 711.004 of the health and safety code.

In six issues, Stacey and Grant contend (1) the trial court's summary judgment was error because Louis released his claim in a previous lawsuit and filed his claim after limitations expired, (2) the trial court lacked subject matter jurisdiction, (3) the trial court's declarations grant more relief than Louis requested as well as violating the rule against perpetuities and the health and safety code, (4) the trial court erred by granting summary judgment, (5) the trial court erred by awarding attorney's fees when the summary judgment should not have been granted and the fees awarded were not equitable and just, and (6) the trial court erred by ruling that Stacey and Grant lacked standing to seek reconsideration of the interlocutory summary judgment order and to pursue their plea to the jurisdiction.

## STANDARDS OF REVIEW

We review a trial court's summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). When reviewing a traditional summary judgment motion, we must determine whether the movant met its burden to establish

that (1) no genuine issue of material fact exists, and (2) the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215–16 (Tex. 2003). If the movant carries this burden, the burden shifts to the nonmovant to raise a genuine issue of material fact precluding summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). We take evidence favorable to the nonmovant as true, and we indulge every reasonable inference and resolve every doubt in the nonmovant's favor. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019).

When both parties move for summary judgment, an appellate court is to review the summary judgment evidence of both parties, determine all questions presented, and either render the judgment that the trial court should have rendered or remand if neither party met its summary judgment burden. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Learners Online, Inc. v. Dallas Indep. Sch. Dist.*, 333 S.W.3d 636, 640–41 (Tex. App.—Dallas 2009, no pet.).

We review the trial court's decision to award attorney's fees under the Declaratory Judgments Act for abuse of discretion, "subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal

principles, or to rule without supporting evidence." *Id.* (citations omitted). In reviewing an award of attorney's fees under the Declaratory Judgments Act, we "must determine whether the trial court abused its discretion by awarding fees when there was insufficient evidence that fees were reasonable and necessary, or when the award was inequitable or unjust." *Id.* "Unreasonable fees cannot be awarded, even if the court believed them just, but the court may conclude that it is not equitable or just to award even reasonable and necessary fees." *Id.*

**APPLICABLE LAW**

Section 711.004 of the Texas Health and Safety Code governs removal of interred remains from a cemetery plot. Interred remains may be removed from a crypt only with the written consent of both the owner of the interment rights in the crypt and the individuals listed in the priority set forth in the statute. TEX. HEALTH & SAFETY CODE § 711.004. Subsection (a) provides:

> (a) Remains interred in a cemetery may be removed from a plot in the cemetery with the written consent of the cemetery organization operating the cemetery and the written consent of the current plot owner or owners and the following persons, in the priority listed:
>
>  (1) the decedent's surviving spouse;
>
>  (2) the decedent's surviving adult children;
>
>  (3) the decedent's surviving parents;
>
>  (4) the decedent's adult siblings; or

> (5) the adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent.

TEX. HEALTH & SAFETY CODE § 711.004(a).

"If the consent required by Subsection (a) cannot be obtained, the remains may be removed by permission of a county court of the county in which the cemetery is located." *Id.* § 711.004(c). Before applying to the court, however, "notice must be given to" (1) the cemetery organization operating the cemetery where the remains are interred, (2) "each person whose consent is required for the removal of the remains under Subsection (a)," and (3) "any other person or entity that the court subsequently requires to be served." *Id.*

In his original petition, Louis cited health and safety code section 711.002 to support his contention that "[a]s his parents' only surviving adult child, he has the absolute authority to control the disposition of their remains under Texas law." That section, entitled "Disposition of Remains; Duty to Inter," grants specified persons the right to control the disposition of a decedent's remains but also imposes a corresponding obligation to pay the reasonable cost of interment. TEX. HEALTH & SAFETY CODE § 711.002(a). As relevant here, subsection (a) provides that "the following persons, in the priority listed, have the right to control the disposition, including cremation, of the decedent's remains, shall inter the remains, and . . . are liable for the reasonable cost of interment: . . . (3) any one of the decedent's surviving adult children; . . . (7) any adult person in the next degree of kinship in the order named by law to inherit the estate of the decedent." *Id.*

–11–

At the time Louis filed his petition, subsection (k) of section 711.002 provided that "[a]ny dispute among any of the persons listed in Subsection (a) concerning their right to control the disposition, including cremation, of a decedent's remains shall be resolved by a court of competent jurisdiction."[3] Subsection (k) also provides, "A cemetery organization or funeral establishment shall not be liable for refusing to accept the decedent's remains, or to inter or otherwise dispose of the decedent's remains, until it receives a court order or other suitable confirmation that the dispute has been resolved or settled." *Id.* § 711.002(k).

Sections 711.002 and 711.004 do not include any provisions regarding attorney's fees. *See id.* §§ 711.002, 711.004.

Section 711.052 provides criminal penalties for certain violations of Chapter 711's provisions. *Id.* § 711.052. Subsection 711.052(a)(6) provides that a "person"[4] who "removes remains from a plot in a cemetery operated by a cemetery organization without complying with Section 711.004" commits an offense. An offense under subsection 711.052(a)(6) is a felony of the second degree. *Id.* § 711.052(d).

---

[3] The first sentence of subsection (k) was amended in 2019 to provide that disputes shall be resolved by a court "with jurisdiction over probate proceedings for the decedent, regardless of whether a probate proceeding has been initiated." Because Louis filed his petition the day before amendment's effective date, the former language applies. *See* Act of May 25, 2019, 86th Leg., R.S., ch. 807, § 1, 2019 Tex. Gen. Laws 2266 (current version at TEX. HEALTH & SAFETY CODE § 711.002(k)).

[4] "Person" is defined in subsection 711.052(a) as "an individual, firm, association, corporation, or municipality, or an officer, agent, or employee of an individual, firm, association, corporation, or municipality." TEX. HEALTH & SAFETY CODE § 711.052(a).

## DISCUSSION

We first consider the trial court's award of attorney's fees against Hillcrest before turning to the court's declarations regarding the Decedents' remains. Caught between competing demands and mindful of its statutory and contractual obligations, Hillcrest filed a counterclaim and third-party claim[5] seeking "a declaratory judgment and determination as to the individual(s) who have the right to control the location of Decedents' remains, under the applicable documents and Texas statutory law, and to instruct and direct [Hillcrest] and other third parties with respect thereto." Hillcrest took no position regarding appropriate disposition of the Decedents' remains.

No party alleged or offered summary judgment evidence that Hillcrest engaged in any wrongful conduct itself or was aware of any wrongful conduct by any of the parties at the time Hillcrest accepted the transfer of Decedents' remains. The trial court's judgment, however, recites that "equity and justice require" that Louis recover $191,254.95 in "reasonable and necessary" attorneys' fees against Hillcrest.

---

[5] We note that, contrary to Louis's contention, Hillcrest was not required to file suit in the first instance. Neither section 711.002 nor 711.004 requires a cemetery organization to initiate suit. And each section contemplates notice to the cemetery organization when other parties initiate suit or obtain a court order. *See, e.g.*, TEX. HEALTH & SAFETY CODE §§ 711.002(k); 711.004(c)(1). As a practical matter, decisions when and how to request judicial determinations of family disputes in such highly sensitive matters are often best left to the families themselves, as the statute permits.

–13–

## 1. Attorney's fees award under Declaratory Judgments Act

In its first issue, Hillcrest contends a party may not "circumvent the statutory limitations of Section 711 of the Texas Health and Safety Code through a declaratory judgment action" to obtain attorney's fees and argues that the trial court erred by granting summary judgment for Louis on this ground. There is no provision for attorney's fees in either section 711.002 or section 711.004.

Hillcrest cites *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660 (Tex. 2009), in support of its argument. In that case, the supreme court held that "a party cannot use the [Declaratory Judgments] Act as a vehicle to obtain otherwise impermissible attorney's fees." *Id.* at 669. The court first concluded that there was no evidence to support the nominal damages awarded by the trial court and rendered a take-nothing judgment on the plaintiff's breach of contract claim. *Id.* at 666. Without an award of actual damages, attorney's fees were not available under Chapter 38 of the civil practice and remedies code. *Id.* at 670; *see* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8) (party may recover reasonable attorney's fees in addition to amount of valid claim and costs if claim is for oral or written contract). The court then considered whether attorney's fees were nevertheless available under the Declaratory Judgments Act in Chapter 37. *See* TEX. CIV. PRAC. & REM. CODE § 37.009 (court may award "reasonable and necessary attorney's fees as are equitable and just").

The court concluded that even though declaratory relief was proper, it did not support the fees awarded by the trial court. *MBM Fin. Corp.*, 292 S.W.3d at 667–70. The court explained,

> Yet while declaratory relief may be obtained under the Act in . . . these circumstances, that does not mean attorney's fees can too. Texas has long followed the "American Rule" prohibiting fee awards unless specifically provided by contract or statute. By contrast, the Declaratory Judgments Act allows fee awards to either party in all cases. If repleading a claim as a declaratory judgment could justify a fee award, attorney's fees would be available for all parties in all cases. That would repeal not only the American Rule but also the limits imposed on fee awards in other statutes. Accordingly, the rule is that a party cannot use the Act as a vehicle to obtain otherwise impermissible attorney's fees.

*Id.* at 669 (footnotes omitted). The court further explained that "granting fees under Chapter 37 when they are not permitted under the specific common-law or statutory claims involved would violate the rule that specific provisions should prevail over general ones." *Id.* at 670. The court concluded that where the plaintiff could not recover attorney's fees under Chapter 38, it could not recover the same fees under Chapter 37. *Id.* "Allowing [plaintiff] to recover the same fees under Chapter 37 would frustrate the provisions and limitations of the neighboring chapter in the same code." *Id.*

Quoting *MBM Financial Corp.*, the court in *Etan Industries, Inc. v. Lehmann* explained, "[w]e have held that simply repleading a claim as one for a declaratory judgment cannot serve as a basis for attorney's fees, since such a maneuver would abolish the American Rule and make fees 'available for all parties in all cases.'" *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011) (per curiam)

(quoting *MBM Fin. Corp.*, 292 S.W.3d at 669). The court continued, "[w]hen a claim for declaratory relief is merely 'tacked onto' statutory or common-law claims that do not permit fees, allowing the UDJA to serve as a basis for fees 'would violate the rule that specific provisions should prevail over general ones.'" *Id.* (quoting *MBM Fin. Corp.*, 292 S.W.3d at 670). "The declaratory judgment claim must do more 'than merely duplicate the issues litigated'" under other claims. *See id.* (quoting *MBM Fin. Corp.*, 292 S.W.3d at 670).

Louis distinguishes *MBM Financial Corp.* on the ground that he filed this lawsuit as a declaratory judgment action from the outset, seeking the two declarations in his original petition we have discussed. Nonetheless, Louis's right to control the disposition of his parents' remains is controlled by health and safety code section 711.002, as he recognized in his original petition against Hillcrest. Citing section 711.002,[6] Louis pleaded that "[a]s his parents' only surviving adult child, he has the absolute authority to control the disposition of their remains under Texas law." He argues in his appellate brief that he "assert[ed] just one, narrow claim for declaratory judgment" in this lawsuit "as the next-of-kin with the 'exclusive' and 'absolute authority to control the disposition of [Decedents'] remains under Texas law'—specifically, Section 711.002 of the Texas Health and Safety Code."

---

[6] Although Louis cited civil practice and remedies code section 711.002 in his petition, it is clear from the context that he was relying on the health and safety code. The civil practice and remedies code has no section 711.002.

Further, section 711.004 sets forth the written consents that are required before interred remains may be removed from a cemetery plot, as Louis seeks to do. Louis argues that section 711.004 does not apply here because it "necessarily presumes that the remains were legally placed in that plot to begin with." He argues that applying section 711.004 would confer "legally cognizable rights" on "grave robber[s]." Section 711.004's written consent requirements, however, protect and enforce the rights and obligations of three parties: the cemetery organization, the current plot owner, and the decedent's family members in the listed priority. *See* TEX. HEALTH & SAFETY CODE § 711.004(a). If the required written consent cannot be obtained, the statute provides that remains may be removed by permission of a court. *Id.* § 711.004(c). Contrary to Louis's contention, section 711.004's requirements protect family members in his position from unfounded claims.

The trial court's judgment provides that "the Court's issuance of declaratory relief to Plaintiff also mooted any relief Plaintiff might seek under any alternative cause of action under TEX. HEALTH & SAFETY CODE § 711.004(c)." Here, however, section 711.004 was not an "alternative cause of action"; it was the specific statutory provision governing the subject of Louis's claims, that is, his right to remove interred remains from a cemetery plot. *See id.* § 711.104; *see also id.* § 711.102(k) (any dispute among persons listed in subsection (a) "concerning their right to control the disposition" of a decedent's remains shall be resolved by a court of competent jurisdiction; cemetery organization "shall not be liable" for refusing to inter, accept,

or otherwise dispose of remains "until it receives a court order or other suitable confirmation that the dispute has been resolved or settled").

We conclude that Louis cannot recover attorney's fees against Hillcrest under the Declaratory Judgments Act,[7] *see MBM Fin. Corp.*, 292 S.W.3d at 670, and the trial court erred by ruling otherwise. *See FM Props. Operating Co.*, 22 S.W.3d at 872. We sustain Hillcrest's first issue. Given this disposition, we need not address Hillcrest's second issue contending that the trial court's award of attorney's fees was not equitable or just under civil practice and remedies code section 37.009.

### 2. Release of claims against Stacey and Grant

In their first issue, Stacey and Grant argue that the trial court erred by granting summary judgment on Louis's declaratory judgment claim despite summary judgment evidence establishing that Louis has released "all claims, litigation, and disputes . . . (whether known or unknown)," against Stacey and Grant "relating in any way to . . . (iv) the transfer, disposition, or handing of the remains of Louis' parents." In response, Louis argues (1) Stacey and Grant lack standing to appeal the trial court's judgment against Hillcrest, (2) Stacey and Grant failed to plead release as an affirmative defense to Louis's claims, (3) Hillcrest was not a party to the Release, and (4) the Release was not broad enough to encompass Louis's claims in

---

[7] Louis argues that Hillcrest, too, pleaded for its attorney's fees under both Chapter 37 and Chapter 38. But the availability of fees here is not determined by the parties' pleadings, and in any event, the trial court did not award any fees to Hillcrest.

this lawsuit for a declaration of his right to control the disposition of his parents' remains. We disagree with each of these contentions.

Louis argues that Stacey and Grant lack standing to appeal the trial court's judgment "on a claim that is not against them."[8] Because the judgment prejudices Stacey's and Grant's interests, however, they have standing to appeal it. *See NXCESS Motor Cars, Inc. v. JPMorgan Chase Bank, N.A.*, 317 S.W.3d 462, 465–66 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (appellant had standing to appeal where judgment effectively voided appellant's contracts with other parties, even though appellant was not a party to the summary judgment proceedings). In addition, the Declaratory Judgments Act requires that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." TEX. CIV. PRAC. & REM. CODE § 37.006(a).

The trial court's judgment expressly declares that any contracts between Hillcrest, Stacey, and Grant "are void and/or invalid" insofar as "they dispossessed [Louis] of his rights to control the disposition and final resting place of his parents' remains or purport to allow [Stacey and Grant] to have any rights to exercise control or the withholding of consent to the transfer of those remains as directed by [Louis]." The trial court's judgment also expressly declares that Louis "has the absolute legal right to control the disposition of his parents' remains and final resting place"

---

[8] Before briefing or submission of this appeal, Louis filed a motion to dismiss Stacey and Grant's appeal on the ground that they lacked standing. We denied this motion by order of June 29, 2021.

–19–

"notwithstanding any objections" by Stacey or Grant to that removal and transfer. Further, Stacey and Grant, as the Decedents' "relatives or descendants," are prohibited from removing Decedents' remains from the location chosen by Louis. We conclude the trial court's order prejudiced Stacey's and Grant's interests. Accordingly, they have standing to appeal. *See NXCESS Motor Cars, Inc.*, 317 S.W.3d at 466.[9]

Louis next responds that release is an affirmative defense that must be pleaded by a defendant "in answer to the petition asserting the claim it seeks to defeat/avoid via release." Louis argues that Hillcrest, the defendant, did not plead release. He contends that Stacey and Grant were not "defendants" and did not plead release in response to any of Louis's claims. He contends that Stacey's and Grant's pleadings only raised the defense as to Hillcrest's claims against them, and those claims were settled before the trial court rendered its final judgment.

---

[9] In the cases Louis cites in support of his argument that Stacey and Grant lack standing, no appellant complained of a ruling specifically prejudicing its interests. *See, e.g.*, *Humeniuk v. Tex. Health Res.*, No. 05-08-00912-CV, 2010 WL 1136499, at *2 (Tex. App.—Dallas Mar. 26, 2010, no pet.) (mem. op.) (no standing where appellants had not suffered any legal injury from the errors alleged on appeal); *Henderson Edwards Wilson, L.L.P. v. Toledo*, 244 S.W.3d 851, 855 (Tex. App.—Dallas 2008, no pet.) (potential settlement credit in separate lawsuit did not create justiciable interest in suit on contract to which appellant was not a party); *Qaddura v. Indo-Euro. Foods, Inc.*, 141 S.W.3d 882, 893 (Tex. App.—Dallas 2004, pet. denied) (dismissal of party who was not served did not affect appellant's rights). In *Gore Family Ltd. P'ship, Ltd. v. Gore*, No. 01-17-00165-CV, 2018 WL 3384554, at *2 (Tex. App.—Houston [1st Dist.] July 12, 2018, no pet.) (mem. op.), also relied on by Louis, the court distinguished its opinion in *NXCESS Motor Cars, Inc.* that we have cited above. In *Gore*, the appellant was no longer a party of record at the time the trial court rendered final judgment, and "any conceivable concern of prejudice" was alleviated by the Declaratory Judgment Act's provision that a declaratory judgment does not prejudice nonparties. *Id.* (citing TEX. CIV. PRAC. & REM. CODE § 37.006(a)). Here, in contrast, Stacey and Grant's interests are expressly addressed in and adjudicated by the trial court's judgment despite their settlement with Hillcrest.

Stacey and Grant, however, both pleaded the affirmative defense of release. Their summary judgment response and evidence made clear that they were relying on the Release to bar Louis's claims—and hence Hillcrest's claims, to the extent Hillcrest pleaded that Louis has the right to control disposition of Decedents' remains—in this lawsuit. Stacey and Grant opposed Louis's summary judgment motion on the ground that Louis's "claim is barred by release," filing a copy of the Release with their response. Louis replied, specifically arguing that the Release "did not release Louis's declaratory-judgment action against Hillcrest and cannot be used as a defense to that action." We conclude that Stacey's and Grant's pleadings were sufficient to raise the issue that Louis's Release barred his claims in this lawsuit. *See Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 18–19 (Tex. App.—San Antonio 1998, no pet.) (employer's pleading of release sufficiently raised the issue for employees who pleaded they were acting in course and scope of employment).

Louis next argues that the Release does not bar his claims against Hillcrest because Hillcrest is not a party to the Release. Louis sought relief only against Hillcrest in his original petition. But in order to grant Louis the relief he sought from the trial court—in part, "a declaration that any contracts between [Hillcrest], on the one hand, and Stacey Kivowitz and/or Grant Dorfman, on the other . . . are void"— the trial court was required to adjudicate claims that Louis had released in 2018. *See* TEX. CIV. PRAC. & REM. CODE § 37.006(a) (when declaratory relief is sought, all

–21–

persons who have or claim any interest that would be affected by the declaration must be made parties).

Louis released Stacey and Grant from "all claims, demands, controversies, actions, debts, damages, obligations, liabilities, costs, fees and/or causes of action of any kind that Louis has asserted or could have asserted in the [2017] Lawsuit, whether directly or derivatively," "relating in any way to . . . the transfer, disposition, or handling of the remains of Louis's parents." Louis's claim against Hillcrest is wholly dependent on claims against Stacey and Grant that he has released. *See Vera*, 989 S.W.2d at 18–19 (son's claims against car dealership that were wholly dependent on his father's released claims were barred by father's release).

We also conclude that the Release encompasses Louis's claims in this lawsuit. Louis argues the 2017 Lawsuit was "primarily a dispute regarding Appellee's, Stacey's and Grant's respective ownership of mineral interests," and accordingly, the "key terms of the settlement" addressed those matters. He argues that the Release addressed only his emotional distress caused by the removal and transfer of Decedents' remains without his permission, not his "right to control the disposition of his parents' remains" or "Hillcrest's obligation to follow his dis- or reinterment instructions." The Release, however, is not limited to Louis's emotional distress. We have quoted its broad language releasing "all claims" "relating in any way" to the "transfer, disposition, or handling" of his parents' remains. *See Schomburg v. TRW*

*Vehicle Safety Sys., Inc.*, 242 S.W. 3d 911, 913 (Tex. App.—Dallas 2008, pet. denied) ("A release is a complete bar to any later action based upon matters covered in the release.").

As the trial court's summary judgment orders and final judgment recognize, Louis cannot obtain the relief he seeks—a declaration of his "absolute legal right to control the disposition of his parents' remains"—without also obtaining relief against Stacey and Grant. That relief requires voiding their contracts with Hillcrest and enjoining them from exercising any future rights regarding their grandparents' interment. Louis, however, already sought and obtained relief against Stacey and Grant and signed mutual releases of all claims relating to "the transfer, disposition, or handling of the remains of Louis' parents." This is the same relief he requested and obtained in this lawsuit; the trial court's judgment declares that Louis "has the absolute legal right to control the disposition of his parents' remains and final resting place and therefore must be permitted to remove and transfer those remains . . . notwithstanding any objections [Stacey and Grant] have made to that removal and transfer." Although Louis attempted to plead his claim only against Hillcrest, the relief he sought and obtained here was against Stacey and Grant.

Accordingly, we sustain the portion of Stacey and Grant's first issue challenging the trial court's judgment on the ground that Louis has released the claims he has asserted in this lawsuit. Given this disposition, we pretermit discussion of Stacey and Grant's remaining issues. *See* TEX. R. APP. P. 47.4. We render

–23–

judgment that Louis's claims for relief are denied. *See FM Props. Operating Co.*, 22 S.W.3d at 872.

CONCLUSION

We reverse the trial court's judgment and render judgment that appellee's claims for relief are denied. *See* TEX. R. APP. P. 43.3.[10]

210101f.p05

/Leslie Osborne//
LESLIE OSBORNE
JUSTICE

---

[10] "When reversing a trial court's judgment, the court must render the judgment the trial court should have rendered" except when remand is necessary for further proceedings or for a new trial in the interests of justice. TEX. R. APP. P. 43.3.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STACEY DORFMAN KIVOWITZ, SAMUEL GRANT DORFMAN, AND SCI TEXAS FUNERAL SERVICES, LLC D/B/A SPARKMAN/HILLCREST FUNERAL HOME AND D/B/A HILLCREST MAUSOLEUM AND MEMORIAL PARK, Appellants

No. 05-21-00101-CV          V.

LOUIS DORFMAN, SR., Appellee

On Appeal from the 14th Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-13563. Opinion delivered by Justice Osborne. Justices Schenck and Smith participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

Appellee Louis Dorfman, Sr.'s requests for declaratory relief and attorney's fees are denied, and appellee Louis Dorfman, Sr. shall take nothing on his claims in this lawsuit.

It is **ORDERED** that appellants Stacey Dorfman Kivowitz, Samuel Grant Dorfman, and SCI Texas Funeral Services, LLC d/b/a Sparkman/Hillcrest Funeral Home and d/b/a Hillcrest Mausoleum and Memorial Park recover their costs of this appeal from appellee Louis Dorfman, Sr.

Judgment entered this 21st day of October, 2022.